On April 8, 1941, there was a democratic primary held in the City of Gretna for the purpose of nominating candidates for Mayor, Marshal and the Board of Aldermen of that City. The election was a closely contested one in which two rival factions — one known as the Gelbke faction and the other as the Miller faction — had entered candidates for the offices to be voted upon. The charter of the City of Gretna provides for the election of five members of the Board of Aldermen and five representatives of each rival faction qualified as candidates for the Board. There were also two independent democratic candidates, namely, Julius J. Ehret and E.W. Linden, who sought nomination so that the total number of candidates for the five positions on the Board of Aldermen amounted to twelve. The candidates aligned with the Miller faction were V. Cerniglia, F.J. Delery, W.G. Gruhler, Henry Haas and John P. Ray, and those of the Gelbke faction were Henry F. Bender, Frank Bessler, John T. Gegenheimer, Eugene Gehring and William Schurb.
After the candidates had been voted upon in the primary, the commissioners of election mailed, in accordance with law, the result of the vote to the Democratic Executive Municipal Committee for the City of Gretna and that committee compiled and promulgated the result as follows: Bender 1,658; Bessler 1,718; Cerniglia 1,520; Delery 1,722; Ehret 364; Gegenheimer 1,728; Gehring 1,687; Gruhler 1,602; Haas 1,607; Linden 241; Ray 1,667; and Schurb 1,638. The committee also found that by adding all of the votes polled for the respective candidates, a total of 17,152 votes were cast for the offices involved. Since five candidates had to be voted for by each voter, the committee, in order to ascertain whether any one or more candidates had received a majority of the votes, divided the total votes cast by five and thereby determined that 3,430 persons had voted in the election. Again, by dividing this figure in half, the committee found that each candidate would have to receive a vote in excess of 1,715 in order to have a majority of the votes and thereby be nominated as a democratic candidate in the primary.
According to the returns compiled by the committee, only three of the candidates received a majority, to-wit Bessler with 1,718 votes, Delery with 1,722 votes and Gegenheimer with 1,728 votes, and it thereupon proclaimed that those candidates had been nominated in the primary. It also determined that, since none of the remaining candidates had received a majority of the votes cast for the other two positions as members of the Board of Aldermen, a second primary would be necessary. It thereupon ordered a second primary election to be held May 13, 1941, and that the four candidates receiving the greatest number of votes (excluding those who were nominated in the first primary) would be entitled to have their names placed on the ballots as candidates of the democratic party. These four men were Bender with 1,658 votes, Gehring with 1,687 votes, Ray with 1,667 votes and Schurb with 1,638 votes. *Page 240 
Within two days after the promulgation by the committee of the results of the primary, three of the unsuccessful candidates — Haas, Cerniglia and Gruhler — all of whom were aligned with the Miller faction — filed separate suits in the Twenty-Fourth Judicial District Court for the Parish of Jefferson and, proceeding under the provisions of Section 86 of Act 46 of 1940 (the new primary election law), contested the result of the election. They claimed that there were certain irregularities in the voting at the polls which redounded to their prejudice and they further averred upon information and belief that, if a recount of the votes cast in the election was had by the court, it would show that no one or more candidates received a majority of the votes cast and that they received a sufficient number of votes to be entitled to enter the second primary election which is set for May 13, 1941. These three suits were brought in the form of mandamus proceedings with the contestants appearing on the relation of the State. The Democratic Executive Municipal Committee for the City of Gretna and Bessler, Gegenheimer and Delery, the successful candidates, were joined as parties defendant to the actions. The relief asked by the contestants was for a recount of the four ballot boxes in which the votes of the electors were cast and that a writ of mandamus issue against the Municipal Committee directing said committee to meet and amend its returns to conform to the true returns as found by the court on the recount of the vote and to declare, in its amended compilation, that no candidate received a majority of the votes and to certify the names of the contestants as candidates for the office of Board of Aldermen in the Second Primary.
In compliance with the relief prayed for by the relators, the District Judge issued alternative writs of mandamus against the committee which were made returnable on April 22, 1941. The other defendants, Gegenheimer, Bessler and Delery, were duly cited and on the return day of the writs of mandamus, the Municipal Committee, Gegenheimer and Bessler appeared and resisted the relators' demands on the following grounds: (1) That the petitions disclosed no right or cause of action and (2) that, since all the relators were identified with the Miller faction and since the Miller faction had a great majority of the commissioners in the primary election, they were estopped from asserting that the commissioners of election committed irregularities or failed to correctly count the votes as alleged in their petitions.
And, for answer to the allegations of the petitions, the respondents denied the charges made by the relators with respect to irregularities in the voting or miscounting of votes on the part of the commissioners. They further alleged in their answer that the compilation of the returns by the election committee was correct and that, if there were any errors or irregularities in the returns of the commissioners, the relators were estopped from asserting them because such irregularities or errors were committed by commissioners aligned with the same faction to which the relators belonged.
The exceptions of the respondents were overruled and the trial judge, acting in conformity with the provisions of Section 86 of Act 46 of 1940, brought the ballot boxes used in the election into court and appointed tellers or counters to conduct a recount of the votes cast. When the four ballot boxes were produced by the Clerk of Court, it was discovered that the box used at the Second Precinct of the First Ward was not in the same condition as it was at the time the commissioners placed the ballots therein and sealed it. The physical appearance of the box showed that it had no blotting paper sealed over the aperture in which the ballots are placed in the box by the voters and that it had no string or tape around it. Counsel for the relators thereupon conceded that, since this ballot box bore evidence of being tampered with, the votes therein could not be recounted because the primary law provides "that before any box or boxes are recounted as provided herein satisfactory evidence must be produced to the Court that such box or boxes or the contents thereof have not been tampered with or disturbed subsequent to the closing of such box or boxes by the commissioners of election". Counsel for the respondents joined in the objection made to the recounting of this ballot box and agreed with counsel for relators that, from its appearance, it had evidently been tampered with. The judge ruled accordingly.
Counsel for relators thereupon called upon the Chairman of the Municipal Committee to exhibit the returns of the commissioners of election for the Second Precinct of the First Ward and when these *Page 241 
returns were produced, counsel offered them in evidence in lieu of the votes in the ballot box of that precinct which could not be recounted for the reasons above stated.
To this offer, counsel for the respondents objected on the ground that the relators had solemnly alleged in their petition that the tally sheets and returns of the commissioners of election were erroneous and did not represent the true result of the voting; that it had also been alleged that none of the ballot boxes used in the election had been tampered with and that therefore the relators were estopped by their judicial allegations, upon discovering that one of the ballot boxes had been tampered with, from shifting their position and using the official tally sheets and returns as evidence in their behalf. After hearing argument concerning the admissibility of these tally sheets and returns, the judge ruled in favor of the respondents and excluded the evidence. The relators took a bill of exception to the judge's ruling and attached the tally sheets and commissioners' returns tendered as part of the bill.
The court thereafter proceeded to have a recount of the ballots in the three other ballot boxes made by the tellers appointed by it. The result of the recount shows that there were a total of 14,103 votes cast in those three boxes, which were distributed as follows: Bender 1,417; Bessler 1,468; Cerniglia 1,192; Delery 1,366; Ehret 309; Gegenheimer 1,442; Gruhler 1,275; Haas 1,262; Linden 219; Ray 1,332; and Schurb 1,366.
After hearing other evidence in the matter, which is not important to our decision here, the cases were submitted for decision and the judge recalled the writs of mandamus and dismissed the relators' demands. In his reasons for judgment, our brother below expressed the opinion that, since a recount could be had only of three of the ballot boxes, the relators had failed to show by legal evidence the total number of votes cast in the election (because the tally sheets and returns of the commissioners of the Second Precinct of the First Ward could not be properly received) and that therefore the court was without sufficient evidence before it to determine who was or was not nominated in the election. Under the circumstances, the judge ruled that he was without power to disturb the compilation and promulgation made by the respondent Democratic Executive Committee.
From the adverse decision, an appeal has been taken to this court by Henry Haas, one of the relators in the separate suits, which were consolidated for trial in the district court. His contention is that the judge of the lower court committed grave error in refusing to admit in evidence the official returns and tally sheets of the commissioners of election of the Second Precinct of the First Ward and that, if these tally sheets and returns are admitted and considered in connection with the recount had of the other three ballot boxes, it will show that he is entitled to have his name placed on the ballot as a democratic candidate for the office of alderman in the second primary to be held in Gretna on May 13, 1941. In other words, it is claimed by the appellant here, and this point is not denied by the appellees, that, if the tally sheets and returns of the commissioners of the Second Precinct of the First Ward are admissible in evidence and added to the votes which were recounted in the district court, the true result of the election will reveal that Gegenheimer and Bessler were nominated in the first primary and that Delery, who is a member of the same faction as Haas, the appellant, did not receive a sufficient number of votes to constitute a majority of the votes cast in the first primary. Under these circumstances, there would be three aldermen to be voted for in the second primary and the six men, exclusive of those nominated in the first primary, receiving the highest number of votes, would be entitled to have their names placed upon the official ballot as candidates in the second primary. These six men are Delery, Bender, Gehring, Ray, Schurb and the appellant Haas.
Counsel for the respondents have again urged their exception of no right or cause of action in this court, which they contend the district judge should have sustained. This exception is founded on two theories — (1) that, since the citation addressed to Gegenheimer, Bessler and Delery directed them to answer the relator's demand within ten days from its service, the proceeding is irregular and not in strict accordance with the provisions of the primary law which requires that a contestee shall be ordered to answer within five days after service of the petition upon him and (2) that the proceeding taken by the relator is not in truth an election contest but a mandamus brought on the relation of the State against the committee, though it has for its object a *Page 242 
recount of the votes cast in the election. They say that it is not brought for the purpose of compelling the committee to perform a ministerial duty since there can be no such duty until the committee has been advised of the result of the recount and has refused to act in accordance with that result.
The first ground upon which the respondents' exception is based is not meritorious. While the Primary Law provides that the contestees be ordered to answer within five days, we do not believe that Gegenheimer and Bessler should be heard to complain merely because they were given a longer time in which to answer than that designated by the act. Moreover, Gegenheimer and Bessler are not really before the court on this appeal as the appellant concedes that the committee was correct in certifying them as party nominees since they received a majority of the votes cast in the primary. Insofar as Delery is concerned, he has made no appearance in the district court or in this court and is not contesting the claims of the appellant.
The second ground upon which the respondents' exception is predicated is not so easily disposed of but we are nevertheless convinced that the relator has proceeded correctly. Counsel for respondents argue that, since the suit is brought on the relation of the State, it is not an election contest as defined by Section 86 of Act 46 of 1940. However, in our appreciation, relator's demand is one for a recount of the votes cast in the election, which recount he says will show that the returns as promulgated are incorrect. He makes as parties defendant to the suit the three candidates who were declared by the Municipal Committee to have been nominated and these are the proper persons who should have been cited as contestees in the litigation.
It is true that plaintiff has coupled with his demand for a recount of the votes a suit for a mandamus against the Municipal Committee to compel it to amend its returns in accordance with the recount. This procedure, we think, was proper and necessary because of the fact that the second primary has been set by the committee for May 13, 1941, and, in the event the relator is successful in this litigation, the tabulation and promulgation of the Municipal Committee would have to be amended. However, counsel say that mandamus will lie only to compel the performance of a ministerial duty; that there is no allegation in the petition that the committee failed in any duty which it was required by law to perform; that it was the duty of the committee to accept as correct the tally sheets and tabulations made by the commissioners of election and that, until it has been established that the returns of the commissioners of election are erroneous, there will be no further duty for the committee to perform. In other words, the argument is that, if the court, after recounting the votes, decrees that the compilation and promulgation made by the committee is incorrect, then and then only will there exist a duty on the part of the committee to amend its orders and that, until that duty comes into being and the committee refuses to perform it, the relator is not entitled to relief by way of mandamus.
This postulation may be conceded to be technically correct because Article 834 of the Code of Practice provides that mandamus lies only to compel public officers to perform duties legally required of them. Hence, theoretically and technically, the duty of amending the returns does not exist until the returns are found to be erroneous. However, in cases such as this, due to the short time given to the contestant in which to obtain relief, it would be absurd, we think, to require him to first obtain a judgment against the contestees declaring that the promulgation made by the committee is erroneous and thereafter, in the event the committee should refuse to amend its promulgation in accordance with the judgment, sue out a writ of mandamus to compel it to perform a plain ministerial duty.
There can be little doubt that, in election contests, the committee which tabulated and promulgated the returns is a proper and necessary party. See Bauer v. Gilmore, La.App., 165 So. 739, 742. Hence, forasmuch as the committee is a proper party to the litigation (although the primary statute does not specifically require it to be made a party), we can see no valid reason why it should not be commanded by mandamus to change its returns in accordance with the result of the recount in the event it is determined that the relator is entitled to relief. That mandamus is proper in cases like this is clearly pointed out by our Brethren of the First Circuit in Bauer v. Gilmore, supra, for, there, Mr. Bauer, the contestant, was held not to have stated a cause of action because, in the relief prayed *Page 243 
for by him, he did not ask for a mandamus against the St. Mary Parish Democratic Executive Committee. The court said: "Therefore, in this case, even though we concede from the allegations of plaintiff's petition that he is entitled to be declared the nominee under the relief prayed for by him, limited as the prayer of his petition is, we would be powerless to compel the committee to so declare him and certify his name to the secretary of state, which that committee must do before he can officially become the nominee of the party and have his name placed on the official ballot at the general election, as is in effect held in the ruling of the Supreme Court just quoted. A judgment in his favor on the prayer of his petition as presented would be an empty one, and could not produce the legal effect desired."
So we say in this case that, if the relator had not sought relief by mandamus against the committee to compel it to amend its returns, a judgment in his favor against the contestees would be an empty one if the committee failed or refused to act. The second primary is fixed by the committee for May 13, 1941, and it would hardly be possible, in the event of the committee's refusal to amend the returns, for the relator, after the judgment against the contestees became final, to obtain the relief he desires prior to the date of the second primary. Under such circumstances, the courts should and will permit relief to be had by writ of mandamus in the election contest proceeding.
The respondents also maintain in their exceptions to the petition that the relator is estopped from attacking the returns of the commissioners of election because a majority of those commissioners were members of the Miller faction, which is the same faction with which relator is affiliated. This contention has not been stressed here and it suffices to say that it is obviously untenable.
Since we find that the exceptions of the respondents were properly overruled, we finally consider whether the district judge was in error in refusing to admit in evidence the tally sheets and returns of the commissioners of the Second Precinct of the First Ward and in not considering those returns in connection with the votes which were recounted in determining whether the official promulgation as made by the Municipal Committee is incorrect. If the evidence is admissible, it follows that the judgment must be reversed because it is conceded that an addition of the recounted votes to the commissioners' returns from the Second Precinct of the First Ward will show that only Gegenheimer and Bessler were nominated in the First Primary and that the relator (as one of the six remaining high men) is entitled to have his name placed on the ballot as a democratic candidate for alderman in the second primary to be held May 13, 1941.
It is argued by counsel for respondents that the evidence was properly excluded because the relator alleged in his petition that none of the ballot boxes had been tampered with and that the returns and tally sheets of the commissioners were incorrect and did not represent the true result of the election. It is said that to permit the relator to rely upon the faith of these returns after he has judicially disavowed them would sanction a shift in his position redounding to the prejudice of respondents and that it must be held that he is bound by his sworn averments to the contrary.
We cannot agree with counsel. The primary law declares that: "The contestant or the contestee may, on allegation on information and belief that a proper recount of any box or boxes
in the municipality, * * * would change the result of said election, require the recount of all or any specified ballotboxes." (Italics ours.) (See Section 86 of Act 46 of 1940.)
And, it is further provided that "before any box or boxes
are recounted * * * satisfactory evidence must be produced to the Court that such box or boxes or the contents thereof have not been tampered with or disturbed subsequent to the closing of such box or boxes by the commissioners of election." (Italics ours.)
It will be seen from the foregoing that an election contestant has the right to obtain a recount of one or more ballot boxes upon allegations made on information and belief that such recount will change the result. However, before the contestant is permitted to have a recount of any box or boxes, he must first submit proof showing that the box or boxes have not been tampered with. Thus, a contestant in an election where 50 boxes were used may desire the recount of only one box and accept the returns of the commissioners as to the other 49. And, if the ballots in that one box as recounted, when added to the returns of commissioners *Page 244 
of the other 49 boxes, reflect a change in the result of the election, the contestant is entitled to the relief prayed for.
The point made by the respondents here is that, since the relator has asked for a recount in all boxes and since he has been able to obtain a recount in only three of the four boxes used in the election, he is barred from using the election returns of the commissioners in the box that could not be recounted because he has alleged that those returns are erroneous and because he has charged that none of the boxes were tampered with.
The answer to the proposition advanced by them is that the relator does not, by offering in evidence the returns of the commissioners in the precinct where he was unable to obtain a recount of the ballot box, necessarily concede that his allegations, regarding irregularities and errors committed by the commissioners in charge, are not true. On the contrary, he is placed in the position of having to accept those returns as correct (and they are presumed in law to be correct since they are the official returns) because the ballot box had been tampered with and he was thereby precluded from sustaining the charges of his petition. There is no shift of position on his part nor does there exist a judicial estoppel. The allegations of the petition stand but, because of relator's inability to demonstrate the correctness of all of his charges by proof, he is forced of necessity to accept something which is presumed to be correct but which he believes to be incorrect.
If we should sustain the view of the respondents in this matter, we would, we think, establish a dangerous precedent — for, in an election where there were scores of ballot boxes and the unsuccessful candidate wished a recount of all of the boxes, he could be precluded from obtaining such a recount of the great majority of the boxes upon a showing that one or more of them had been tampered with. We cannot believe that such a result was ever contemplated by the legislature in the passage of Act 46 of 1940, which grants to a contestant, in clear and unmistakable language, the right of having any one or more ballot boxes recounted and considered in determining the true result of an election.
For convenience, we repeat herein the decree which was handed down by us in this matter on May 1, 1941.
For the reasons to be hereafter assigned, the judgment appealed from is annulled, avoided and reversed and it is now ordered that there be judgment in favor of the relator, Henry Haas, and against the respondents, the Democratic Executive Municipal Committee for the City of Gretna and F.J. Delery, ordering that the alternative writ of mandamus heretofore issued be reinstated and perpetuated to the extent of directing the Democratic Executive Municipal Committee for the City of Gretna and its Chairman to meet and amend the returns heretofore promulgated by it on April 12, 1941, so as to declare Frank Bessler and John T. Gegenheimer to have been selected as the democratic nominees for the office of alderman of the City of Gretna in the democratic primary election held on April 8, 1941, and also declaring that the relator, Henry Haas, together with F.J. Delery, Henry F. Bender, Eugene Gehring, John P. Ray and William Schurb, are entitled to enter the second primary as candidates for the office of alderman of the City of Gretna to be held on May 13, 1941.
Reversed.